IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALISA MYERS, | § | |
| *Plaintiff*, | § | |
| vs. | § | 5-20-CV-00445-XR-RBF |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION[1]; | § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation concerns Plaintiff Alisa Myers' request for judicial review of the administrative denial of her application for disability-insurance benefits under Title II of the Social Security Act. This action was referred for a report and recommendation, pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules and the docket management order entered on October 8, 2019, in the San Antonio Division of the Western District of Texas. This Court has jurisdiction to review a final decision of the Social Security Administration, *see* 42 U.S.C. § 405(g), and authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

As discussed further below, the Court finds that substantial evidence supports the Commissioner's decision and that the administrative proceedings involved no reversible legal error. The Commissioner's decision should therefore be **AFFIRMED**.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Kilolo Kijakazi—the current Acting Commissioner of the Social Security Administration—for the named Defendant Andrew Saul.

**Factual and Procedural Background**

Plaintiff Myers filed her application for disability insurance benefits in early January 2018,[2] alleging a disability onset date of July 1, 2017. *See* Tr. 162. Myers has a bachelor's degree and past relevant work experience as a cashier and an advertising clerk, which are considered either light or sedentary semi-skilled occupations. *See* Tr. 64.

Myers alleged the following impairments render her disabled: multiple sclerosis; migraines; fatigue; insomnia; chronic pain; vision problems; bowel/bladder problems; numbness in hands and feet; dizziness; and hearing loss. *Id.* 194. Myers' claim was initially denied on April 18, 2018, *id.* 69-79, 96-99, and once again on September 20, 2018, after she requested reconsideration, *id.* 80-92;101-03. Myers then requested and received an administrative hearing. *Id.* 106-08; 27-68. Myers attended the hearing on May 20, 2019, unrepresented, notwithstanding the ALJ's assurance that he would continue the hearing to permit Myers an opportunity to secure counsel should she desire. *See id.* 29.

The ALJ denied Myers' claim for benefits. *Id.* 11-21. In reaching that conclusion, the ALJ first found that Myers met the insured-status requirements of the Social Security Act and then applied the five-step sequential analysis required by the regulations. *See id.* 13. At step one, the ALJ found Myers hadn't engaged in substantial gainful activity since the alleged onset date of July 1, 2017. *Id.* At step two, the ALJ found Myers had the following severe impairments: multiple sclerosis, cervical degenerative disc disease, obesity, migraine headaches, vertigo, depression, and anxiety. *See id.* The ALJ, however, determined that Myers' other claimed impairments of insomnia, vision issues, bowel and bladder problems, and hearing loss either weren't severe or

---

[2] There is a minor discrepancy regarding the date Myers sought benefits. Myers' Application for Disability Insurance Benefits, *id.* 162, states that she applied for benefits on January 10, 2018. The ALJ, however, asserted that Myers filed her application on January 9, 2018. *See id.* 11. This one-day differential isn't material here.

weren't medically determinable impairments. *See id.* 13-14. Finally, the ALJ concluded that Myers' allegations of fatigue, chronic pain, and numbness in her hands and feet were symptoms, not in and of themselves medically determinable impairments. *See id.* Nevertheless, the ALJ noted that he had considered these symptoms in evaluating the severity of any related medically determinable impairments. *See id.* At step three, the ALJ found that none of Myers' impairments met or medically equaled the impairments of one of the listed impairments in the applicable Social Security regulations. *Id.* 14-15. Before reaching step four, the ALJ found Myers had the physical functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a), except that Myers was further limited to "the occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, no balancing, occasional stooping, kneeling, crouching and crawling." *Id.* 17. Mentally, the ALJ determined that Myers could perform "simple, routine and repetitive tasks, that is, unskilled (no more than SVP 2) work; limited to superficial interaction with the public and with coworkers." *Id.*

In reaching this residual-functional-capacity assessment, the ALJ found unpersuasive the "opinion" of Dr. Ann D. Bass—Myers' treating rheumatologist—who stated Myers is "medically totally physically disabled and unable to work at this point." *Id.* 19 (citing Tr. 530 & 20 C.F.R. § 404.1520b(c)(3)). The ALJ's justification for rejecting Dr. Bass's statement was that it addressed a legal issue reserved solely for the Commissioner. *Id.* The ALJ gave Myers' claim a boost, however, by finding the less restrictive opinions of the state agency medical consultants and psychiatric/psychological consultants unpersuasive. *Id.* Specifically, the ALJ determined that a light residual-functional-capacity assessment was "inconsistent with the evidence of [Myers'] ongoing diffuse pain, migraines and vertigo." *Id.* The ALJ further found the opinion that Myers wasn't subject to any severe mental impairments "[in]consistent with [Myers'] neurological examinations of May 2017, during which she displayed inconsistent attention and nervousness"

and also "inconsistent with [Myers'] need for Adderall to address a deficit in attention and concentration." *Id.*

At step four, after considering Myers' residual functional capacity and the testimony of the vocational expert, the ALJ determined that Myers couldn't perform any past relevant work. *Id.* 20. At step five, however, the ALJ determined—considering Myers' age, educational factors, prior work experience, and residual functional capacity as well as the testimony of the vocational expert—Myers could perform the following jobs existing in significant numbers in the national economy: addresser (Dictionary of Occupational Titles (DOT) #209.587-010), cutter pacer (DOT #249.587-014), and final assembler (DOT 713.687-018)—all sedentary unskilled (SVP2) occupations. *Id.* Accordingly, the ALJ determined that Myers was not disabled through the date of last insured, and therefore was not entitled to benefits. *Id.* 21.

Myers requested review of the ALJ's finding, which the Appeals Council denied. *Id.* 1-7. Accordingly, on April 8, 2020, after exhausting all available administrative remedies, Myers sought judicial review of the administrative determination. Dkt. No. 1.

**Analysis**

Although Myers' brief breaks her argument for reversal and remand into three distinct points of error, she in fact raises two intertwined issues that relate to and challenge the ALJ's residual-functional-capacity determination. *See* Br. at 1. Myers argues (as her third point of error) that the ALJ didn't properly evaluate Dr. Bass's opinion in accordance with 20 C.F.R. § 404.1520c. And Myers also argues that in rejecting all opinions of record on the effect of her physical (related to point of error number one) and mental impairments (related to point of error number two), the ALJ improperly interpreted the raw medical data and relied on his lay interpretation of that data to determine Myers' residual functional capacity.

### A. The ALJ Didn't Reversibly Err in Evaluating the Medical Opinions of Record.

There is a new Social Security Administration rule regarding residual-functional-capacity determinations for all claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Myers filed her application for disability insurance benefits in January 2018, the new rule applies. The rule provides that the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a). Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2).

The ALJ correctly applied § 404.1520c to the four state-agency medical opinions of record, evaluating the opinions' persuasiveness and discussing their supportability and consistency. *See* Tr. 19. Myers doesn't dispute this point.

Myers, however, disputes the ALJ's handling of statements from Dr. Bass, which Myers labels as "medical opinions." In particular, Myers argues the ALJ reversibly erred by failing to address the supportability and consistency of Dr. Bass's statements in her February 1, 2019, Medical Statement. That Medical Statement provides in relevant part as follows:

> Ms. Myers is currently under my long-term neurological care and management for highly-active relapsing-remittingg [sic] multiple sclerosis. Due to this progressive, inflammatory, neurodegenerative disease, the patient is suffering from double vision, dizziness, imbalance, diffuse shooting pain, numbness in the extremities, fatigue, and trouble with over all mobility. The patient has started treatment with Gilenya in an attempt to reduce further clinical relapse, reduce disease activity on MRI, and slow down disability progression. However, unfortunately, due to the patient's current neurological deficit and damage, she is medically considered totally physically disabled and UNABLE to work at this point.

Tr. 530.

An opinion or conclusion that a claimant is disabled is a legal conclusion reserved for the Commissioner and, hence, the ALJ doesn't need to "justify" a decision to give little weight to it.

5

*See Miller v. Barnhart*, 211 Fed. App'x 303, 305 (5th Cir. 2006) (finding that even under the so-called treating-physician rule, the ALJ need not analyze an opinion that a claimant is disabled or unable to work).[3] Accordingly, the ultimate conclusion offered by Dr. Bass—that Myers "is medically considered totally physically disabled and UNABLE to work at this point"—was not entitled to any deference from the ALJ, and the ALJ similarly wasn't obligated to justify departing from it (beyond noting that it is a conclusion reserved to the Commissioner). *See id.*; *see* 20 C.F.R. § 404.1520b(c)(3).

Moreover, no other statement in Dr. Bass's Medical Statement constitutes a "medical opinion" to which § 404.1520c applies. Pursuant to the revised regulations, "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work or adapt to environmental conditions. *Id.* § 404.1513(a)(2). Dr. Bass's conclusion that Myers is simply "UNABLE TO WORK" is merely a restatement of her conclusion that Myers is utterly disabled; it is a brief and conclusory legal judgment lacking supporting detail or basis that could inform a residual-functional-capacity assessment. *See* 20 C.F.R. § 404.1513(a)(2), (3) (labelling as "other medical evidence" "judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis"); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (noting that good cause for affording little weight to a medical opinion is presented when the opinion is brief and conclusory or unsupported by the record). And statements from a physician that simply describe a claimant's diagnoses (sentence one of Dr. Bass's letter) or symptoms (sentence two of Dr. Bass's letter) and provide the

---

[3] *See also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (same).

treatment protocol (sentence three of Dr. Bass's letter) do not fall within the definition of "medical opinion." Instead, such statements constitute "other medical evidence" and, hence, need not be analyzed pursuant to the § 404.1520c factors.[4]

There is no merit to Myers' contention that the Commissioner can't now successfully argue Dr. Bass's statement falls short of a "medical opinion" because the ALJ called it an "opinion" when discussing it. To start, the ALJ's colloquial use of the term "opinion" doesn't necessarily mean the ALJ believed Dr. Bass provided a "medical opinion" for purposes of § 404.1513(a)(2), (3) and § 404.1520c. Indeed, the ALJ's refusal to credit the statement at all after considering it indicates the opposite. And the obligation to analyze the consistency and supportability of a physician's statement arises only if the statement is in fact a "medical opinion" under the regulations. *See* 20 C.F.R. § 404.1520c. Moreover, even if calling the statement an "opinion" required the ALJ to analyze its consistency and supportability, it is now clear that the statement is not a "medical opinion" but rather the type of statement described in § 404.1520b(c) as "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c) (emphasis removed). As such, the conclusory statement—even after analysis—couldn't have supported a different outcome here.

Further, there's no real dispute that the ALJ considered Dr. Bass's statement; the dispute is instead about *how* the ALJ considered it. Myers' argument is a technical one that faults the ALJ's perceived failure to formally evaluate the consistency and supportability of the statement. That

---

[4] *See id.* § 404.1513(a)(3) (classifying "judgments about the nature and severity of [a claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis" as "other medical evidence" as opposed to "medical opinions"); *id.* § 404.1520c(a) ("When a medical source provides one or more medical opinions or prior administrative medical findings, [the Agency] will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.").

said, Myers acknowledges that the ALJ took into account the matters discussed in the statement, albeit without necessarily treating them as if they were a medical opinion:

> The ALJ did in fact recognize *consistent with Dr. Bass's assessment* that Myers experienced double vision, dizziness, imbalance . . . diffuse shooting pain, numbness in the extremities, fatigue, and trouble with overall mobility, the medical reports of record show that Myers has a history of vision problems; suffers from severe MS, migraine headaches, and vertigo, experiences spells of vertigo and dizziness . . . and experiences 'residual diffuse pain.'

Pl. Br. at 19 (emphasis added). The record further reflects that the ALJ discussed Myers' treatment regimen. *See* Tr. at 11. The purely technical error at issue, assuming for argument's sake an error is presented here, is insufficient to warrant reversal in these circumstance because, as already mentioned, no different outcome could have resulted had the ALJ considered the statement more formally as a medical opinion. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").[5]

### B. No Failure to Develop the Record or Reliance on an Improper Lay Opinion That Warrants Reversal Occurred Here.

It is well established that "[t]he ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In *Ripley*, the Fifth Circuit explained that "usually" to satisfy this duty an ALJ should request a medical opinion describing the work a claimant is capable of performing. *Id.* "The absence of such a statement, however, does not, in itself, make the record incomplete." *Id.* Accordingly, to the extent Myers argues the ALJ necessarily committed reversible error by assessing Myers' residual

---

[5] *See also Falco v. Shalala,* 27 F.3d 160, 163-64 (5th Cir.1994) ("That [the ALJ] did not follow formalistic rules in his articulation compromises no aspect of fairness or accuracy that this process is designed to ensure.").

8

functional capacity without an opinion from a medical expert, that argument fails. *See id.*[6] Neither *Ripley*, any other Fifth Circuit decision cited by Myers, nor the regulations, requires a "positive statement" or "positive evidence" from a medical source indicating a claimant could perform the exertional demands indicated by the ALJ's residual-functional-capacity assessment.[7] Instead, where no medical opinion has been provided or where—as is the case here—the ALJ rejects all medical opinions of record, the Court's "inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

      **1.** *Substantial evidence supports the ALJ's residual-functional-capacity assessment, and the ALJ didn't improperly rely on a lay interpretation of raw medical data.* The ALJ determined that the stability of Myers' multiple sclerosis, cervical degenerative disc disease, obesity, migraine headaches and vertigo indicated that Myers could perform sedentary exertion work with a prohibition against balancing or climbing ladders, ropes, or scaffolds and only occasional performance of other postural activities. *See* Tr. 18. With respect to both the physical and mental aspects of the residual functional capacity determination, there is substantial evidence to support the ALJ's conclusions, which are not merely the result of improper lay interpretations of raw medical data as Myers contends.

In support of the physical assessment, the ALJ cited multiple relatively normal MRI scans of Myers' brain and thoracic spine, as well as various normal physical examinations from October 2015 through May 2019 wherein Myers demonstrated normal ambulation, gait, and vision. *See id.*

---

[6] *See also Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) ("We also reject Joseph–Jack's argument that because the record was devoid of a residual function capacity (RFC) assessment by a medical source, the ALJ was not competent to assess her RFC. It is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion.").

[7] *See, e.g.*, *Jones v. Berryhill*, No. CV 17-5324, 2018 WL 1325851, at *12 (E.D. La. Feb. 23, 2018), *report and recommendation adopted*, 2018 WL 1287637 (E.D. La. Mar. 13, 2018) (collecting authorities).

(citing Tr. 305, 351, 355, 358, 426, 430-31, 532). This type of evidence is surely within the ALJ's purview to consider. *See, e.g.*, 20 C.F.R. § 404.1513(a)(1)-(5). The ALJ recognized that as late as June 29, 2018, Dr. Bass categorized Myers' multiple sclerosis as "overall manageable on copaxone except for the residual [multiple sclerosis] related diffuse pain." *Id.* (quoting Tr. 426). Although Myers complained of diplopia (double vision) in May 2018, the ALJ observed that the issue resolved after a course of prednisone. *See id.* (citing Tr. 421, 499, 532). Finally, the ALJ recognized that Myers' migraines, vertigo, and dizziness were moderately controlled with medication and more tolerable than in previous years. *See id.* (citing Tr. 326, 489, 532, 536).

Accordingly, substantial evidence supports the ALJ's assessment that Myers could perform sedentary work with some additional postural limitations. *See* 20 C.F.R. § 404.1567(a) (explaining that sedentary work is performed primarily in the seated position, with lifting of no more than 10 pounds at a time and occasional standing and walking). And the analysis undertaken to reach this conclusion was not an exercise in lay interpretation of raw medical data, as Myers contends, but instead the ALJ's use of medical information to determine Myers' capacity to work. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam) ("The record indicates that the ALJ used the medical information provided by [the plaintiff] to determine the plaintiff's residual functional capacity for work."); 20 C.F.R. § 404.1513.

On the mental-capacity side of the ledger, the ALJ observed that Myers' mental impairments were severe, contrary to the state agency consultants' opinions. *See* Tr. 19 (citing May 2017 neuropsychological evaluation, *id.* 358-60). In support, the ALJ cited the inconsistent attention and nervousness Myers displayed at her May 2017 neuropsychological evaluation and the fact that Myers took Adderall to address a deficit in attention and concentration. *Id.* At the same time, the ALJ concluded that Myers' "average to superior attentional functioning during [her May 2017] neurological examination and her normal concentration and attention at several other

medical examinations strongly suggest that she can perform simple routine and repetitive tasks." *Id.* 18 (citing May 2017 neuropsychological evaluation, which revealed normal cognitive functioning across all cognitive domains and the lack of any objective evidence of cognitive dysfunction). The ALJ also noted that Myers' "consistently cooperative demeanor and normal mood and affect further indicate that she can tolerate supervision interaction with the public and coworkers." *Id.*

Substantial evidence, thus, similarly supports the ALJ's mental residual-functional-capacity assessment,[8] notwithstanding the lack of a medical opinion on the issue. *See, e.g.*, *Taylor*, 706 F.3d at 603 (ALJ's residual-functional-capacity assessment was supported by substantial evidence where claimant's medical records failed to corroborate his complaints of pain); *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (per curiam) (ALJ's residual-functional capacity supported by substantial evidence even where the ALJ rejected all medical opinions of record). Here again, "[w]hat [Myers] characterizes as the ALJ substituting his [lay] opinion is actually the ALJ properly interpreting the medical evidence to determine [Myers'] capacity for work." *Taylor*, 706 F.3d at 603.

**2.** *Myers fails to demonstrate prejudice*. Even assuming the ALJ erred by relying on a lay interpretation of the medical data and failing to fully develop the record, any such alleged error wouldn't merit reversal in these circumstances. Myers hasn't shown—let alone argued—prejudice in connection with these alleged errors. *See Ripley*, 67 F.3d at 557. Although Myers does argue (unsuccessfully) prejudice in connection with the ALJ's rejection of Dr. Bass's statements, that argument doesn't sufficiently speak to these alleged errors.

---

[8] *See Smith v. Colvin*, No. 3:13-CV-1884-N-BN, 2014 WL 1407437, at *4 (N.D. Tex. Mar. 24, 2014), *adopted by* 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014) (noting that "courts in this circuit have held that an RFC [residual functional capacity] limited to 'simple work' reasonably incorporates a moderate or even marked limitation in concentration, persistence, or pace") (collecting cases).

Myers' main argument in this regard appears to be that reversal is required because the record doesn't contain an assessment from a health professional that "clearly establishes" Myers has the residual functional capacity assessed by the ALJ. *See* Pl. Br. at 12, 16. But as discussed above, an ALJ doesn't err by failing to obtain a medical-source statement addressing a claimant's functional limitation, so long as the residual-functional-capacity assessment is supported by substantial evidence. *See Ripley*, 67 F.3d at 557. And to establish prejudice in connection with a failure to develop the record, Myers must "show that [s]he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir.1996) (per curiam) (quotations omitted). Myers points to no evidence—either in the record or that would have been adduced had the record been further developed—that would indicate a different result could have been achieved. *See id*. (noting the need to show prejudice in connection with a failure-to-develop-the-record claim). Accordingly, even assuming the ALJ erred, any such error doesn't merit reversal. *See Mays*, 837 F.2d at 1364.

## Conclusion and Recommendation

For the reasons discussed above, it is recommended that the Commissioner's decision should be **AFFIRMED**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 16th day of July, 2021.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE