**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

ALISA MYERS,
   *Plaintiff*

-vs-

ANDREW M. SAUL, COMMISSIONER
OF SOCIAL SECURITY;
   *Defendant*

§
§
§
§
§
§
§
§
§

SA-20-CV-00445-XR

## ORDER

On this date, the Court considered United States Magistrate Judge Richard B. Farrer's Report and Recommendation regarding the above numbered and styled case, filed July 16, 2021 (ECF No. 18) and Plaintiff Alisa Myers's objections, filed on July 29, 2021 (ECF No. 19). After careful review, the Court **ACCEPTS** Magistrate Judge Farrer's recommendation to affirm.

## BACKGROUND

This case involves Plaintiff's request for review of the administrative denial of her application for disability benefits under the Social Security Act, 42 U.S.C. §§ 405(g), 421(d). This Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. § 405(g).

Myers fully exhausted her administrative remedies prior to filing this action in federal court. She filed her application for disability insurance benefits in early January 2018, alleging a disability onset date of July 1, 2017. *See* ECF No. 12-5, Tr162. Myers has a bachelor's degree and past relevant work experience as a cashier and an advertising clerk, which are considered either light or sedentary semi-skilled occupations. *See id.* at 64.

Myers alleged that the following impairments render her disabled: multiple sclerosis; migraines; fatigue; insomnia; chronic pain; vision problems; bowel/bladder problems; numbness in hands and feet; dizziness; and hearing loss. ECF No. 12-6, Tr194. Her claim was initially denied on April 18, 2018, ECF No. 12-3, Tr69-79; ECF No. 12-4, Tr96-99, and once again on September 20, 2018, after she requested reconsideration. ECF No. 12-3, Tr80-92; ECF No. 12-4, Tr. at 101-03. Myers then requested and received an administrative hearing. ECF No. 12-4, Tr106-08; ECF No. 12-2, Tr27-68. Myers attended the hearing on May 20, 2019, unrepresented, notwithstanding the ALJ's assurance that he would continue the hearing to permit Myers an opportunity to secure counsel should she desire. ECF No. 12-2, Tr29.

The ALJ denied Myers's claim for benefits. *Id.* at 11-21. In reaching that conclusion, the ALJ first found that Myers met the insured-status requirements of the Act and then applied the five-step sequential analysis required by the regulations. At step one, the ALJ found Myers had not engaged in substantial gainful activity since the alleged onset date of July 1, 2017. *Id.* at 13. At step two, the ALJ found Myers had the following severe impairments: multiple sclerosis, cervical degenerative disc disease, obesity, migraine headaches, vertigo, depression, and anxiety. *See id.* The ALJ noted that Myers has a history of insomnia and vision problems but did not find them severe; he "considered any potential effects of these impairments in determining the residual functional capacity." *Id.* The ALJ also noted that Myers "alleges bowel and bladder problems and hearing loss, but no acceptable medical source has noted any objective evidence in support of these allegations," such that the ALJ found these conditions "not to be medically determinable impairments." *Id.* at 14. Finally, the ALJ concluded that Myers's allegations of fatigue, chronic pain, and numbness in her hands and feet were symptoms rather than medically

determinable impairments, but he considered them to the extent they were related to medically determinable impairments. *See id.*

At step three, the ALJ found that Myers's impairments did not meet or medically equal one of the listed impairments in the applicable Social Security regulations. *Id.* at 14-16. The ALJ expressly considered listing 1.04 (disorders of the spine), 2.07 (disturbance of labyrinthine-vestibular function), 11.09 (multiple sclerosis), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). *Id.* at 14. The ALJ considered Myers's cervical degenerative disc disease, vertigo, multiple sclerosis, headaches, obesity, and mental impairments and concluded that they did not either singly or in combination meet or equal a listing. Before reaching step four, the ALJ found Myers had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that Myers was further limited to "the occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, no balancing, occasional stooping, kneeling, crouching and crawling" and "limited to simple, routine and repetitive tasks, that is, unskilled (no more than SVP 2) work" and "limited to superficial interaction with the public and with coworkers." *Id.* at 17.

In reaching this RFC, the ALJ found unpersuasive the written statement of Dr. Ann D. Bass—Myers' treating rheumatologist—stating that Myers is "medically considered totally physically disabled and unable to work at this point." *Id.* at 19 (citing Tr. at 530; 20 C.F.R. § 404.1520b(c)(3)). The ALJ's justification for rejecting Dr. Bass's statement was that the determinations whether a claimant is disabled and unable to work are legal issues reserved to the Commissioner. *Id.* The ALJ further found the less restrictive RFC opinions of the state agency medical consultants unpersuasive. *Id.* Specifically, the ALJ determined that a light work capability RFC assessment was "inconsistent with the evidence of [Myers's] ongoing diffuse

pain, migraines and vertigo." *Id.* The ALJ further found the opinion that Myers was not subject to any severe mental impairments "[in]consistent with [Myers's] neurological examinations of May 2017, during which she displayed inconsistent attention and nervousness" and also "inconsistent with [Myers's] need for Adderall to address a deficit in attention and concentration." *Id.*

At step four, after considering Myers's RFC and the testimony of the vocational expert ("VE"), the ALJ determined that Myers could not perform her past relevant work. *Id.* at 19. At step five, considering the VE's testimony, the ALJ determined that Myers could perform the following jobs existing in significant numbers in the national economy: addresser, cutter pacer, and final assembler—all sedentary unskilled (SVP2) occupations. *Id.* at 20. Accordingly, the ALJ determined that Myers was not disabled through the date of last insured, and therefore was not entitled to benefits. *Id.* at 21.

Myers requested review of the ALJ's finding, which the Appeals Council denied. *Id.* at 1-7. Accordingly, on April 8, 2020, Myers sought judicial review of the administrative determination. ECF. No. 1. On July 16, 2021, Magistrate Judge Farrer tendered his Report and Recommendation, recommending that the Commissioner's decision be affirmed. ECF No. 18. Plaintiff timely filed her objections on July 29, 2021. ECF No. 19.

## DISCUSSION

### I.   Applicable Legal Standards

#### A.   Standard of Review

Where the report and recommendation has been objected to, the Court reviews the Magistrate Judge's recommended disposition *de novo* pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1). In reviewing the Commissioner's decision denying

disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (the court is not to reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez*, 64 F.3d at 174.

### B. Entitlement to Benefits

Every individual who is insured for disability benefits, has not reached retirement age, has filed an application for benefits, and is under a disability, is eligible to receive disability insurance benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual shall be determined to be under a disability only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied to work. 42 U.S.C. § 423(d)(2)(A).

### C.  Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner require disability claims to be evaluated by a prescribed five-step process. 20 C.F.R. §§ 404.1520. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The first step involves determining whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience. *Id.* The second step involves determining whether the claimant's impairment is severe. *Id.* § 404.1520(c). An impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. If a claimant has no severe impairments,

the claimant is deemed not disabled. This second step requires the claimant to make a *de minimis* showing. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

In the third step, the ALJ compares the severe impairment(s) with those on a list of specific impairments. 20 C.F.R. § 404.1520(d). If a claimant's impairment meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience. *Id.* If the impairment is not on the list, the ALJ moves on to the fourth step and reviews the claimant's RFC and the demands of her past work. *Id.* § 404.1520(e). At this step, the ALJ may consult a VE to determine how a particular job is usually performed. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see also Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). If the claimant is still able to do her past work, the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant cannot perform her past work, the ALJ moves to the fifth and final step, evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work. *Id.* § 404.1520(g). If the claimant cannot do other work, she will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the sequential analysis. Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002). If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

## II.      Discussion

Myers raised three arguments in her brief. First, she noted that the ALJ rejected the only physician opinions on the effect of Myers's physical impairments, interpreted the raw medical data, and imposed an RFC in contravention of the opining medical sources, such that the ALJ's RFC determination is based upon his lay determination and not supported by substantial evidence. Second, Myers asserts that the ALJ relied upon his lay interpretation of raw psychological data to determine Myers's mental RFC, such that the mental RFC assessment is not supported by substantial evidence. And third, Myers contends that the ALJ did not properly evaluate Dr. Bass's opinion.

### A. The Magistrate Judge's Report and Recommendation

The Magistrate Judge found that Myers raised two intertwined issues challenging the ALJ's RFC determination. First, Myers argues that the ALJ did not properly evaluate Dr. Bass's opinion in accordance with 20 C.F.R. § 404.1520c. Second, Myers argues that, in rejecting all record opinions on the effects of Myers's physical and mental impairments, the ALJ improperly interpreted the raw medical data and relied on his lay interpretation of that data to determine Myers's physical and mental RFC. The Magistrate Judge found that the ALJ correctly applied 20 C.FR. § 404.1520c to the state agency medical opinions, evaluating their persuasiveness and discussing their supportability and consistency. The Magistrate Judge rejected Myers's argument that the ALJ improperly evaluated Dr. Bass's statements in her February 1, 2019 Medical Statement. That Medical Statement provides in relevant part as follows:

> Ms. Myers is currently under my long-term neurological care and management for highly-active relapsing-remittingg [sic] multiple sclerosis. Due to this progressive, inflammatory, neurodegenerative disease, the patient is suffering from double vision, dizziness, imbalance, diffuse shooting pain, numbness in the extremities, fatigue, and trouble with over all mobility. The patient has started treatment with Gilenya in an attempt to reduce further clinical relapse, reduce disease activity on

> MRI, and slow down disability progression. However, unfortunately, due to the patient's current neurological deficit and damage, she is medically considered totally physically disabled and UNABLE to work at this point.

Tr530. The Magistrate Judge concluded that an opinion that a claimant is disabled is a legal conclusion reserved for the Commissioner and thus the ALJ does not need to justify a decision to give it little or no weight. ECF No. 18 at 5-6 (citing *Miller v. Barnhart*, 211 F. App'x 303, 305 (5th Cir. 2006) and 20 C.F.R. § 404.1520b(c)(3)). Thus, Dr. Bass's ultimate conclusion that Myers is "totally physical disabled and UNABLE to work" was not entitled to any deference and the ALJ was not obligated to justify departing from it. ECF No. 18 at 6.

The Magistrate Judge further concluded that no other statements in the Medical Statement were a "medical opinion" to which § 404.1520c applies. The Magistrate Judge further noted that statements from a physician that simply describe a diagnosis or symptoms and provide the treatment protocol do not fall within the definition of "medical opinion" but are instead "other medical evidence." *Id.* at 6-7. Last, the Magistrate Judge found that the fact that the ALJ referred to Dr. Bass's statements as "opinions" does not mean he considered it to be a medical opinion for purposes of § 404.1513(a)(2), (3) and § 404.1520c, nor did it trigger the obligation to analyze the consistency and supportability of the statement. *Id.* The Magistrate Judge found the statement to be "the type of statement described in § 404.1520b(c) as 'inherently neither valuable nor persuasive'" such that it could not have supported a different outcome. *Id.* at 7.

Moreover, the Magistrate Judge noted that the ALJ did recognize, consistent with Dr. Bass's assessment, that Myers experienced double vision, dizziness, imbalance, diffuse shooting pain, numbness in the extremities, fatigue, and trouble with overall mobility, and also discussed Myers's treatment regimen. Thus, the Magistrate Judge found that, even if the ALJ erred in not

evaluating the Medical Statement as a medical opinion, such error would not result in a different outcome and thus did not warrant reversal.

As to whether the ALJ improperly substituted his own lay opinion in place of medical expert opinion in determining Myers's RFC, the Magistrate Judge found no error because neither *Ripley v. Chater* nor any other decision cited by Myers, nor the regulations, requires a "positive statement" or "positive evidence" from a medical source indicating a claimant could perform the exertional demands indicated by the ALJ's RFC assessment. ECF No. 18 at 9. Instead, where no medical opinion has been provided or where the ALJ rejects all medical opinions of record (as here), the Court's inquiry focuses on whether the decision is supported by substantial evidence in the existing record. *Ripley*, 67 F.3d at 557. The Magistrate Judge concluded that substantial evidence supports the ALJ's RFC assessment, and the ALJ did not improperly rely on a lay interpretation of raw medical data. The Magistrate Judge noted that the ALJ considered various medical records and used this information to determine Myers's capacity to work, and that if there was any error, no prejudice is shown because Myers points to no evidence indicating that a different result could have been achieved. The Magistrate Judge concluded that the medical record does not have to contain a medical source statement finding the exact RFC that the ALJ ultimately finds, so long as the ALJ's RFC is supported by substantial evidence, which it was.

### B. Myers's Objections

In her objections, Myers contends that this case is distinguishable from those cited by the Magistrate Judge, such as *Taylor v. Astrue*, 706 F.3d 600 (5th Cir. 2012), because in those cases there were assessments from a treating physician and a testifying physician that provided substantial evidence to support the ALJ's decision. Myers asserts that here the Magistrate Judge does not identify any assessment from a medical source addressing the effect of Myers's

recognized impairments on her ability to work that provides a basis for the ALJ's RFC finding. Rather, Myers contends, this case is like *Beachum v. Berryhill*, No. 1:17-CV-00095-AWA, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018), where the ALJ rejected the only medical opinions of record and imposed a different RFC based on his interpretation of the raw medical data. Myers contends that although the ALJ recognized from the medical evidence that Myers experiences "ongoing diffuse pain, migraines and vertigo," the ALJ does not cite to any medical assessment of record that clearly establishes that such "ongoing diffuse pain, migraines and vertigo" allows for the determined RFC or how Myers can have such an RFC despite those symptoms. Myers contends the error is reversible without a specific showing of prejudice.

### C.  Analysis

The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. *Ripley*, 67 F.3d at 557. The ALJ is responsible for determining an applicant's RFC. *Id.* Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. *Id.* The absence of such a statement, however, does not, in itself, make the record incomplete. *Id.* Where no medical statement has been provided, the inquiry focuses on whether the ALJ's decision is supported by substantial evidence in the existing record. *Id.* The record should contain evidence of the effect of the applicant's impairments on their ability to work. *Id.* The Commissioner must consider all medical opinions contained in the record when making the RFC determination. Further, reversal is appropriate only if the applicant shows that she was prejudiced. *Id.*

### 1. Whether the ALJ erred in his consideration and evaluation of Dr. Bass's statement

The Court first considers whether the ALJ properly evaluated Dr. Bass's February 2019 medical statement. Myers argues that Dr. Bass's statement constitutes a "medical opinion" that

had to be analyzed for consistency and supportability, and the ALJ's failure to do so was reversible error. The Court disagrees.

The parties here dispute whether Dr. Bass's opinion is a "medical opinion." It is clearly not. In *Winston v. Berryhill*, 755 F. App'x 395, 398 (5th Cir. 2018),  the issue was whether the consultative examiner's opinion was a medical opinion that was required to be weighted under the old regulations.[1] The Fifth Circuit held that a "medical opinion" requires both an evaluation of symptoms and an expression of judgment regarding a claimant's capabilities and restrictions to qualify as a "medical opinion" within the meaning of the Social Security Act. *Id.* at 403. The examiner, Dr. Davis, conducted a physical examination and noted that the plaintiff weighed 333 pounds and observed that she moved slowly, had great difficulty standing, used furniture and the wall for support, and walked slowly with a wide based gait. The Fifth Circuit concurred that the evaluation "makes judgments about the nature and severity" of the claimant's "symptoms, diagnosis and prognosis," but "does not opine on 'what [the claimant] can still do despite [her] impairment(s), and [her] physical or mental restrictions.'" *Id.* at 402. Rather, "the evaluation simply outlines Dr. Davis's diagnoses and observations, leaving other personnel to draw conclusions about the implications for Winston's RFC." Because the doctor's statement was not a "medical opinion," the ALJ did not violate any legal standards specific to medical opinions when she assessed and incorporated only the doctor's unfavorable observations without discussing or assigning weight to the doctor's favorable statements.

After March 27, 2017, the Social Security Administration changed its regulations so that a "medical opinion" is now defined in a more limited manner as "a statement from a medical

---

[1] 20 C.F.R. § 404.1527(a)(2), which applies to claims filed before March 27, 2017, states: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."

source about what [the claimant] can still do despite [her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions in" a list of abilities, including specific physical and mental demands of work activities. 20 C.F.R. § 404.1513(a)(2). Further, ALJs are no longer required to assign each medical opinion a weight: "For claims filed on or after March 27, 2017 . . . [w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a); *see also Winston*, 755 F. App'x at  402 n.4. Rather, the ALJ must consider medical opinions using certain factors listed in paragraphs (c)(1) through (c)(5) of § 404.1520c, as appropriate. The most important factors are supportability and consistency. The ALJ must "articulate how [he] considered the medical opinions" according to paragraph (b), which states: "We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R.  § 1520c(b). Section (b) requires the ALJ to explain how he considered the supportability and consistency factors for a medical source's medical opinions, and provides that he may explain, but is not required to explain, how he considered the other section (c) factors, which are relationship with the claimant, specialization, and "other factors that end to support or contradict a medical opinion." *Id.* § 1520c(c).

Here, the ALJ did not explain how he considered the supportability and consistency factors for Dr. Bass's opinion, instead stating summarily that he considered the opinion "unpersuasive" because "the determination whether a claimant is disabled and unable to work are legal issues reserved to the Commissioner." Tr. 19 (citing 20 C.F.R. § 404.1520b(c)(3)). This was proper. Section 404.1520b(c) discusses "evidence that is inherently neither valuable nor persuasive" and applies in claims filed on or after March 27, 2017. Subsection (c)(3) includes

"statements on issues reserved to the Commissioner" and subsection (c)(3)(i) expressly includes "statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work." The regulations state that the ALJ is not required to provide *any* analysis about how such evidence was considered, *even under § 404.1520c*. 20 C.F.R. § 404.1520b(c) ("Because the evidence listed in paragraphs (c)(1) through (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, we will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c.").

The ALJ did not err in his treatment of Dr. Bass's statement because it is not a medical opinion. Section 1520b is clear that section 1520c does not require the ALJ to provide any analysis about how statements that a claimant is disabled or unable to work were considered. Without these statements, Dr. Bass's statement is merely a statement of symptoms ("the patient is suffering from double vision, dizziness, imbalance, diffuse shooting pain, numbness in the extremities, fatigue, and trouble with over all mobility") and treatment, but does not contain "an [acceptable] expression of judgment regarding a claimant's capabilities and restrictions." Without this latter portion, the statement is not a "medical opinion" under either the prior or current regulations. Dr. Bass's statement was therefore not required to be evaluated under the factors listed in 20 C.F.R. § 1520c, including supportability and consistency.

Myers contends that the ALJ was nevertheless required to evaluate the supportability and consistency of Dr. Bass's statement that Myers suffers from double vision, dizziness, imbalance, diffuse shooting pain, numbness, fatigue, and limited mobility due to her multiple sclerosis under § 404.1520c. But § 404.1520c applies only to medical opinions and the Commissioner rightly argues that this portion of the statement would be considered "other medical evidence," which is

"evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [a claimant's] impairments, [] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). At most, some of these statements might also be considered "signs" that qualify as "objective medical evidence" under § 404.1513(a)(1).[2] But they are not "medical opinions," and thus Myers's argument that the ALJ did not properly evaluate them under § 404.1520c must fail.

### 2. Whether the ALJ's RFC determination is supported by substantial evidence

Myers contends that the ALJ could not determine Myers's physical or mental RFC based on the record because he found unpersuasive all of the relevant medical opinions and administrative findings and thus lacked a medical assessment in the record to provide a basis for his RFC finding.

The ALJ is responsible for assessing the claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ must assess the RFC based on all of the relevant medical and other evidence. *Id.* § 404.1545(a)(3). The ALJ must consider any statements about what the claimant can still do that have been provided by medical sources, whether or not they are based on formal medical examinations, and will also consider descriptions and observations of the claimant's limitations from their impairment(s), including limitations that result from symptoms, such as pain, provided by the claimant, the claimant's family, neighbors, friends, or other persons. *Id.* § 404.1545(a)(3). The ALJ is not required to adopt but must consider prior administrative medical findings and medical evidence from agency consultants. *Id.* § 404.1513a. If all the evidence, including all medical opinions, is consistent and there is sufficient evidence for the ALJ to determine if the

---

[2] Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from the claimant's statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. 20 C.F.R. § 404.1502(g).

claimant is disabled, the ALJ will make the determination based on that evidence. *Id.* § 404.1520b(1). If the evidence is insufficient or inconsistent, the ALJ may take additional actions. *Id.* § 404.1520b(b). If any of the evidence, including medical opinions and prior administrative medical findings, is inconsistent, the ALJ may consider the relevant evidence and see if he can determine whether the claimant is disabled based on the available evidence. *Id.* § 404.1520b(b)(1). The ALJ may also recontact the claimant's medical source or request other additional evidence. "[T]he ALJ's need to contact a medical source arises only when the available evidence is inadequate to determine if there is a disability." *Cornett v. Astrue*, 261 F. App'x 644, 649 (5th Cir. 2008).

The Commissioner argues that Plaintiff's insistence that the ALJ base his decision on medical opinions cannot be reconciled with the new regulatory framework, which does not require the ALJ to defer to any medical opinion. The Commissioner argues that, even under the prior framework, *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995) made clear that the ALJ could determine the RFC without a specific medical opinion so long as substantial evidence supports the determination and that *Taylor v. Astrue*, 706 F.3d 600 (5th Cir. 2012) permits the ALJ to interpret the medical evidence to determine the claimant's capacity for work. The Magistrate Judge agreed that these cases, as well as other cases, make clear that the ALJ is not required to have a medical opinion that matches his RFC determination.

The Court agrees. In *Ripley v. Chater*, the Fifth Circuit expressly stated that the absence of a medical source statement describing the types of work that the applicant is still capable of performing does not, in itself, make the record incomplete, and the inquiry in that case focuses on whether the decision of the ALJ is supported by substantial evidence. 67 F.3d at 557. In *Taylor v. Astrue*, the Fifth Circuit addressed the plaintiff's argument that the ALJ's RFC

determination ran contrary to the medical opinions, noted that the RFC determination is the sole responsibility of the ALJ, and concluded that the ALJ properly used the medical information provided by the plaintiff to determine the plaintiff's RFC for work. 706 F.3d at 602-03. *See also Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, *at 7-8 (5th Cir. Aug. 19, 2005) (concluding there was substantial evidence to support the ALJ's RFC determination, despite the absence of a medical opinion, where the ALJ considered the plaintiff's own testimony about her daily capabilities, his observations of her during the hearing, and medical evidence that demonstrated improvement in certain conditions rather than further degeneration); *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) ("We also reject Joseph-Jack's argument that because the record was devoid of a residual function capacity (RFC) assessment by a medical source, the ALJ was not competent to assess her RFC. It is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion."); *Jones v. Berryhill*, No. 17-5324, 2018 WL 1325851, at *13 (E.D. La. Feb. 23, 2018) ("No Fifth Circuit case, including the binding decision in *Ripley*, has stated that 'a "positive statement" or "positive evidence" from a medical source" is always required for an ALJ to assess residual functional capacity.").

*Williams v. Astrue*, 355 F. App'x 828, 831 (5th Cir. 2009), is distinguishable. In that case, all the plaintiff's treating physicians agreed that Williams was unable to perform anything but sedentary work, and yet the ALJ did not give their opinions controlling weight and found that Williams could stand or walk for six hours in an eight-hour workday. The Fifth Circuit found that even assuming the ALJ was entitled to deny controlling weight to all of plaintiff's treating physicians, there was *no* other evidence supporting the ALJ's RFC finding, and other evidence showed Williams could only stand for thirty minutes even after completing treatment. *Id.* at 831-32. Thus, objective medical evidence directly contradicted the ALJ's RFC finding.

In contrast, here the ALJ did not find persuasive the administrative opinions that Myers could do light work and used other evidence in the record to impose a more restrictive RFC of sedentary work. The ALJ's RFC determination is more limited/favorable than the state agency medical consultants' opinions, and Plaintiff has not identified any medical opinions or objective medical evidence in the record that contradicts the ALJ's RFC finding. Further, the ALJ properly evaluated the medical opinion evidence, and he also noted all the symptoms identified by Dr. Bass in the statement and explained how he considered them in his analysis. The Court agrees with the Magistrate Judge's thorough analysis that the RFC determined by the ALJ is supported by substantial evidence.

In her objections, Plaintiff complains that the RFC finding is nevertheless not supported by substantial evidence because the ALJ does not specify how Myers can engage in sedentary work (with additional limitations) if she has ongoing diffuse pain, migraines, and vertigo, which the ALJ stated were inconsistent with light work. But in this statement itself, the ALJ noted evidence to support a light exertion RFC, as found by state agency medical consultants, in Myers's activities of daily living and a normal physical examination in November 2017. The evidence cited by the ALJ to support a finding of light exertion RFC by the agency consultants also supports the ALJ's finding that Myers could perform sedentary work. Further, other portions of the ALJ's analysis and the record provide substantial evidence for the ALJ's conclusion that Myers could perform sedentary work.

The ALJ did find that Plaintiff's migraines and vertigo were severe, and though he did not find pain to be an impairment, he acknowledged it is a symptom and stated he would evaluate it accordingly. And, as noted, he rejected the state agency's conclusion that Myers could do light work because of her diffuse pain, migraines, and vertigo. Although he did not expressly

explain why he found that Plaintiff could still do sedentary work despite these symptoms, his finding is supported by substantial evidence.

As to the migraines, the ALJ found that treatment has provided "moderate relief." He also noted that in May 2019, Myers exhibited no neurological deficits and described her headaches as well controlled with Verapamil and Sumatriptan and more tolerable than in previous years. Although Plaintiff at first testified they are not controlled, she eventually agreed that they are, as she had reported to her doctor. Tr53. As for the vertigo and dizziness, the ALJ noted that it had "improved with Verapamil" per the treating neurologist. The ALJ found these conditions to be stable with treatment, which indicated that Myers can perform sedentary work with exertional and postural limitations to account for the vertigo and dizziness (such as no balancing or climbing ladders, ropes, or scaffolds). Thus, substantial evidence supports the ALJ's determination that Myers could still perform sedentary work despite the migraines and vertigo/dizziness.

The Court next considers whether Plaintiff's diffuse pain precludes the ALJ's RFC finding. At the hearing, Plaintiff did not testify much about her diffuse pain or any functional limitations resulting from it. She testified that she had neck pain related to small disc bulges, Tr42, and that she takes "hydrocodone slash Norco" for unspecified pain and that she had been taking it for years. Tr43. She also testified that she doesn't sleep well most nights and has a hard time going to sleep because of pain. Tr49. She testified she takes Gabapentin for that, but it takes time to work, and she sometimes takes Advil. Tr49-50. She testified that she has "a lot of pain in my arms" and "[m]y legs are daily, but not as terrible as my arms." Tr56. She stated,

> I mean they're more sore than my legs, but my legs or my arms and arms, this one
> is numb all the time. . . . Sometimes when I grab something, or I put my hair
> behind my ear, there's a huge electrical shock and it hurts really, really bad. I also

have what feels like searing ripping pain in my arms and the best that I could describe it like to my husband was, it felt like when I just had my C Section.

*Id.*

When a medically determinable impairment could reasonably be expected to produce pain, the ALJ must evaluate the intensity and persistence of the symptoms to determine how it limits the capacity for work. 20 C.F.R. § 404.1529(c)(1). The ALJ acknowledged this standard for conducting the analysis. Tr17. The ALJ stated that Myers alleges that she suffers from chronic pain and that it affects her ability to do certain activities. *Id.* But he found that Myers's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. *Id.*

The ALJ noted that Myers had normal physical examinations in October 2015 and November 2017, and that in March 2018 her multiple sclerosis was characterized as "overall manageable" except for "residual diffuse pain" from her multiple sclerosis. No functional limitations from this diffuse pain or its treatment are noted. In February 2019, Dr. Bass noted that Plaintiff had "shooting diffuse pain" and "trouble with overall mobility." But no functional limitations other than trouble with overall mobility are noted as a result of the pain, and the ALJ's finding of sedentary work is consistent with limited overall mobility.

Section 404.1529(c)(3) provides: "[I]nformation that your medical sources or nonmedical sources provide about your pain or other symptoms (*e.g.*, what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms" and "[b]ecause symptoms, such as pain, are subjective and difficult to quantify, any symptom related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent

with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled." The ALJ will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons. Relevant factors are (i) the claimant's daily activities, (ii) the location, duration, frequency, and intensity of pain, (iii) precipitating and aggravating factors, (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; (v) treatment, other than medication, received for relief of pain; (vi) any measures used to relieve pain (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) other factors concerning functional limitations and restrictions due to pain. Pain will be determined to diminish a claimant's capacity for basic work activities to the extent that alleged functional limitations and restrictions due to pain can reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id.* § 404.1529(c)(4).

The ALJ cited Plaintiff's activities of daily living and normal neurological exam in November 2017 as support for light exertion work, which also supports an RFC finding of sedentary work. The ALJ specifically noted that Plaintiff reports that she helps get her three children to school, prepares meals, does laundry and light cleaning, and shops for groceries, and that a progress note also indicated that she worked for her husband at his business. The ALJ did not expressly analyze the other relevant factors, but Plaintiff points to no evidence in the record that the pain causes her any specific functional limitations, that her pain does not respond to pain medication, or that her pain medication or pain relief measures result in functional limitations inconsistent with sedentary work. The mere existence of pain does not automatically require a

finding of disability; it must instead be determined whether substantial evidence indicates an applicant can work despite having pain. *Mulet-Rivera v. Barnhart*, 437 F. Supp. 2d 616, 634 (S.D. Tex. 2006). Based on the record, the Court does not doubt that Myers suffers from pain, but substantial evidence supports the ALJ's decision that Myers can maintain sedentary employment despite her pain.

**CONCLUSION**

For the foregoing reasons, the recommendation of the Magistrate Judge is **ACCEPTED**, and the decision of the Commissioner is **AFFIRMED**. The Clerk is instructed to enter a judgment on behalf of Defendant and to close this case.

It is SO ORDERED.

SIGNED this 3rd day of September, 2021.

Xavier Rodriguez
United States District Judge